THE STATE OF NEBRASKA, ON THE RELATION OF HARRY WHITE, v. A. G. KENDALL, COMMISSIONER OF PUBLIC LANDS AND BUILDINGS.

1. **Educational Lands and Funds**: RULES OF BOARD. The board of educational lands and funds have the power within constitutional and statutory limits to establish reasonable rules for its government in the transaction of its business.

2. ———: ———. The rule of said board adopted by the following resolution: "*Resolved*, That all surrenders of sale or leases of school lands shall be held thirty days before lease will be issued on the same, and the county treasurer notified of said surrender and that applications will be received to lease the same," is not inimical to the provisions of either the constitution or the statute.

ORIGINAL application for mandamus.

*P. Likes and A. J. Rittenhouse,* for the relator.

*Isaac Powers, Jr., Attorney General,* for the respondent.

COBB, J.

This case arises upon an application by the relator to this court for a writ of *mandamus* against A. G. Kendall, commissioner of public lands and buildings, commanding him to issue a lease to the relator of certain tracts of school land therein described, being the trust property of the state. The case was submitted to the court upon the application, answer, and a certain stipulation of facts filed with the papers in the case.

It appears that the two tracts of school lands in question, were on the 9th day of March, 1880, leased to one R. H. Pead; that on the 17th day of June, 1882, the lease for one of the said tracts was by the said Pead surrendered to the state; that on the 19th day of the same month the other of the said leases was also surrendered to the state; that the treasurer of Hamilton county, in which county the said school lands are situated, was thereupon informed of the surrender of the said leases, and that, under the rules and regulations adopted by the board of educational lands and funds, the said lands would be subject to lease at the expiration of thirty days after such surrender by said Pead, and the said board made the following order, to-wit: "In the matter of leasing educational lands, the board proceeded to open bids for leasing educational lands. On motion, the bids for leasing were referred to Commissioner A. G. Kendall, and where subject to lease, to lease to the highest bidder." This was done at the regular meeting of said board, on the 11th day of July, 1882, and before the expiration of thirty days after the surrender of either of the said leases;

that the bids then on file and referred to the said commissioner under said order, amounted to several hundred in number, and that by mistake and inadvertence the proposal of said relator for the said lands was marked accepted, and a lease was executed by the said commissioner and forwarded to the treasurer of Hamilton county to be delivered to the said relator; that before said lease was delivered to said relator, on the 17th day of July, 1882, it was discovered that said lease had been executed and forwarded by mistake, and thereupon the said commissioner wrote to the said county treasurer informing him of such mistake, and directing him to return the said lease to said commissioner, which was done, and said lease was returned to said commissioner and never delivered to or executed by the said relator.

It further appears, that at the time of said meeting of said board on the 11th day of July, 1882, and the time of the executing and forwarding of the said lease as aforesaid, the relator was the highest bidder therefor, his said bid being twenty and one-fourth per cent of the appraised value of said land; but that afterwards, and on the 7th day of August, 1882, after the said commissioner had recalled and cancelled the said lease as having been executed and forwarded by mistake, and with full knowledge of all the facts, the relator filed in the office of the said commissioner another bid and proposal, wherein and whereby he proposed to lease the said lands and pay therefor, for the south-east quarter of section sixteen in township eleven north, of range 7 w., twenty-eight and one-third per cent of the appraised value thereof, and for the east half of the south-west quarter, and the south-west quarter of the south-west quarter of the same section, township, and range, thirty and three-fourths per cent of the appraised value thereof; but that on and before the next meeting of said board, on the 8th day of August, 1882, there was presented to and filed with said board of educational lands and funds a bid and

proposal for all of said lands, and to pay for a lease thereof seventy-five per cent of the appraised value thereof. So that at the meeting of said board at which the said lands were actually leased, the relator was not the highest bidder therefor.

On the 11th day of March, 1879, the board of educational lands and funds, at a regular meeting thereof, adopted the following resolution, which remains in force, to-wit: "*Resolved,* That all surrenders of sale or leases of school lands shall be held thirty days before leases will be issued on the same."

This case turns upon the question whether the said board had the power to adopt this resolution for their government under the law, and whether the same is valid and binding upon the public. This board is created by the constitution. Its duties are of a highly important character. That it has the right, or that it is its duty to adopt rules and regulations for the uniform government of its business, and the lands and funds under its control, no one will deny; or that it has the right to infringe upon the provisions of the constitution, or the laws enacted in pursuance thereof, no one will claim.

The provision of statute in force, bearing on the subject, is as follows:

"Sec. 17. Whenever any of the lands herein provided for have been offered for sale, and not sold for want of bidders, the said board may lease the same on the following conditions: All persons desiring to lease such lands shall file their sealed proposals for the leasing of the same, under the terms and conditions hereinafter set forth in the office of the county treasurer of the county in which such lands are situated. The proposal shall describe the land desired to be leased, by section, township, and range, and set forth the highest rate per cent on the appraised value of the land which the bidder will pay. *Provided,* That no bid or proposal offering less than six per cent per annum on the

appraised value of such land shall be entertained; and such proposals shall be transmitted by the treasurer to the commissioner of public lands and buildings, and by him opened at the next meeting of the board, who shall examine and approve or reject the same, and if approved, execute a lease for the same to such bidder at the price named in such proposal. *Provided*, If any other bid for the same land shall be presented to said board, they shall execute the lease to the highest bidder," etc.

These provisions are applicable to the first leasing of school lands, and are dependent upon such lands having first been offered for sale, and not sold for want of bidders. They do not directly, if at all, apply to lands that have been leased, and such lease surrendered or forfeited. There is no provision in the statute expressly authorizing the board to accept the surrender of a lease and execute a second lease of the same lands to the same or a different lessee. If they possess such power, it grows out of their general powers granted by the provisions of the constitution, and the first section of the chapter of the statute under consideration, and its exercise is neither limited nor qualified by the terms of the section above quoted, further than such limitations and qualifications may be necessary to an intelligent, fair, and equitable administration of the trust reposed in said board.

The very nature of the duties required of said board by the constitution and the law, requires that they should establish standing rules for their government, in the dispatch and transaction of business. Resolution is an appropriate method for the establishing of such rules. The spirit and intent of the law is, that these trust lands, after being offered for sale, and not sold for the want of bidders, should upon fair competition be leased to the highest bidder. I think the rule above quoted is well calculated to ensure this result, and that it is neither inimical to the provisions of the constitution or of the statute.

State v. Oleson.

The peremptory writ of mandamus must be denied. By the Court,

WRIT DENIED.